*U.S. Department of Justice*

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

November 15, 2017

**BY ECF**

The Honorable Kimba M. Wood
United States District Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

    Re:    *United States v. Almonte*, S2 16 Cr. 670 (KMW)

Dear Judge Wood:

    The Government respectfully submits this letter in advance of trial to notify the Court that the Government intends to introduce testimony regarding a report to the National Center for Missing and Exploited Children ("NCMEC").  Although the Government does not seek to introduce the NCMEC report itself, the Government anticipates eliciting testimony about this report from both a healthcare provider (the "Physician's Assistant") who participated in making the report to NCMEC, as well as from a law enforcement witness ("Detective-1") who received the report.  For the reasons set forth below, this proposed testimony is admissible and should be permitted at trial.  The Government has raised this issue with defense counsel, who have indicated that they would like to brief the issue.

**I.    Medical Provider Testimony**

    The Government anticipates that there will be testimony at trial that a thirteen-year-old girl, identified as "Victim-2" in the superseding indictment, sought regular treatment at the medical clinic annexed to her middle school for concerns related to her sexual health.  In particular, the Physician's Assistant who treated Victim-2 will testify that Victim-2 sought frequent tests for sexually transmitted diseases, as well as frequent pelvic examinations based on reports of vaginal discomfort. During the course of her treatment, Victim-2 said the following, in substance and in part:

- Victim-2 was experiencing vaginal discomfort
- Victim-2 was having sex with multiple new partners
- Victim-2 was having unprotected sex
- Victim-2 was having sex with multiple adult men for money

    An out-of-court statement is admissible for the truth of the matter asserted where it "is made for – and is reasonably pertinent to – medical diagnosis or treatment" and it describes "past

or present symptoms or sensations; their inception; or their general cause." Fed. R. Evid. 803(4). As the Supreme Court has explained:

> [T]he evidentiary rationale for permitting hearsay testimony regarding . . . statements made in the course of receiving medical care is that such out-of-court declarations are made in contexts that provide substantial guarantees of their trustworthiness. . . . [A] statement made in the course of procuring medical services, where the declarant knows that a false statement may cause misdiagnosis or mistreatment, carries special guarantees of credibility that a trier of fact may not think replicated by courtroom testimony.

*White v. Illinois*, 502 U.S. 346, 355-56 (1992).

With respect to statements regarding the "inception" or "general cause" of a medical issue, courts have taken a liberal view of admissibility. The hearsay declarant's statements about the cause of past or present symptoms is permissible, so long as the statements do not assign fault. *United States v. Graham*, No. 14 Cr. 500 (NSR), 2015 WL 6161292, at *8 (S.D.N.Y. Oct. 20, 2015); *United States v. Marrero*, No. 05-CR-942 (DLI), 2014 WL 3611625, at *14 (E.D.N.Y. July 22, 2014). Thus, in cases involving allegations of sexual assault or exploitation, medical professionals are permitted to testify regarding the victim's description of the assault. A case from the Ninth Circuit is illustrative:

> [A] registered nurse and sexual examiner[] examined [the victim] at the hospital the night of the assault. [The nurse] testified that the victim's description of the assault affects the examination she conducts. She examined [the victim's] mouth for injury. [The victim] told her that 'she had been forced to have oral copulation.' This hearsay, objected to by the defense, was properly admitted under Fed. R. Evid. 803(4) as a statement 'made for purposes of medical diagnosis or treatment.' True, [the nurse] was collecting evidence, but that forensic function did not obliterate her role as a nurse, in a hospital, performing a medical examination of a victim of a sexual assault. It would have been unprofessional for [the nurse] to have treated [the victim] without eliciting an account of what had happened to her.

*United States v. Gonzalez*, 533 F.3d 1057, 1062 (9th Cir. 2008); *see also United States v. Iron Thunder,* 714 F.2d 765, 772 (8th Cir. 1983) (patient's statement to physician at hospital that she was raped held admissible under Rule 803(4)); *United States v. Joe*, 8 F.3d 1488, 1495 (10th Cir. 1993) (upholding, pursuant to Rule 803(4), physician's testimony that patient said she was raped and that she identified her husband as the assailant).

Here, the statements Victim-2 made to the Physician's Assistant at the Morris Heights Medical Center are admissible pursuant to Federal Rule of Evidence 803(4). The Government expects to establish at trial, through the testimony of the Physician's Assistant, that Victim-2's statements at the clinic were made solely for purpose of obtaining medical diagnosis and treatment, and that the statements were "reasonably pertinent" to the Physician's Assistant's ability to evaluate, diagnose, and treat Victim-2. The statements the Government seeks to admit described the nature and extent of the trauma to which Victim-2 had been subjected.

As noted above, Victim-2 said, in substance and in part, that she was having frequent sexual interactions with adult men in exchange for money. The statements informed the Physician's Assistant's decisions regarding the type of evaluations and tests to administer, the areas of Victim-2's body to examine, and the sexual health counseling to provide, among other things. Accordingly, these statements are admissible under Rule 803(4).

The Government also anticipates eliciting testimony from the Physician's Assistant about the Physician's Assistant's role in submitting a report to NCMEC based on Victim-2's statements. However, because the Government does not intend to introduce the report itself, the Physician's Assistant's statements about her own actions to notify law enforcement do not present hearsay concerns.

### III.  Law Enforcement Testimony

In addition to the foregoing references to the NCMEC report, the Government anticipates that a law enforcement witness ("Detective-1") will testify that the Government's investigation began when it received a NCMEC report. The Government anticipates that Detective-1 will explain that some of the details in the report were important to investigative steps taken during the course of the investigation. Because this information is necessary to give context to Detective-1 testimony, and because the statements in the report are only offered for their effect on the recipient, not for the truth of the statements themselves, the Government submits that this testimony is not hearsay, and should be admitted.

In particular, the Government anticipates that Detective-1 will testify that he received a NCMEC report about possible child exploitation, and searched for the particular address listed in the report—170th Street and Webster Avenue in the Bronx—on Backpage.com, a website where sex workers commonly posted advertisements at the time. Detective-1 will explain that he found an advertisement on Backpage.com advertising prostitution at 170th Street and Webster Avenue. Detective-1 then called the phone number listed in the advertisement, and he set up an undercover rescue operation that same night, using undercover detectives posing as prospective clients. When the undercover detectives arrived at the brothel, the police found a fifteen-year-old girl and a girl who had just turned eighteen working as prostitutes. Detective-1 also recovered the house phone for the brothel: a cell phone bearing the phone number listed in the Backpage.com advertisement Detective-1 had found.

In order to give context for Detective-1's testimony about his searches on Backpage.com and the rescue operation, Detective-1 will need to explain to the jury why he took those

investigative steps.[1]  Otherwise, the jury may be needlessly confused about why Detective-1 was searching through Backpage.com for a particular address.  Accordingly, the Government respectfully requests that the Court permit Detective-1 to testify about receiving a NCMEC report.

        Very truly yours,

        JOON H. KIM
        Acting United States Attorney


     By: __/s_____
       Stephanie Lake/Alison Moe
       Assistant United States Attorneys
       (212) 637-1066/2225

cc: Anthony Cecutti, Esq. (by ECF)
   Jennifer Louis-Jeune, Esq. (by ECF)

---

[1] Should the Court grant this request, the Government will instruct Detective-1 not to testify about facts from the NCMEC report besides the address contained in the report.  For example, the Government does not intend to elicit testimony about the name or age of the victim listed in the NCMEC report.