USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 7/27/18

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

v.

MARIA SOLY ALMONTE,

Defendant.

16 CR 670 (KMW)

OPINION AND ORDER

KIMBA M. WOOD, District Judge:

Maria Soly Almonte (the "defendant") moves pursuant to Rules 29 and 33 of the Federal Rules of Criminal Procedure for a judgment of acquittal with respect to Counts One and Two and for a new trial. Dkt. No. 165 ("Def. Mem.") Defendant went to trial, testified and was convicted by a jury on all five Counts in the Indictment. She claims that the evidence admitted at trial was insufficient to support a guilty verdict on any of the five counts. Def. Mem. At 6-10, and that a new trial is warranted "because the cumulative weight of the evidence does not support a judgment of guilty." Def. Mem at 11. The evidence admitted at trial, when viewed in the light most favorable to the Government, was more than sufficient for the jury to find the defendant guilty beyond a reasonable doubt as to all counts. Accordingly, the Court denies defendant's motions.

## BACKGROUND

### I. Indictment

Defendant was charged in three sex trafficking counts, including (1) conspiring with others to engage in sex trafficking of minors, in violation of 18 U.S.C. § 1594(c), (2) sex trafficking of a minor under fourteen, in violation of 18 U.S.C. § 1591(a), (b)(1), and (3) sex trafficking of a minor under eighteen in violation of 18 U.S.C. 1591(a), (b)(2) and 2. Defendant

was also charged in two counts relating to the use of phones and the Internet in furtherance of a prostitution business, including (4) violating the Travel Act, in violation of 18 U.S.C. § 1952(a)(3) and 2, and (5) conspiracy to violate the Travel Act, in violation of 18 U.S.C. § 371. All of these charges stemmed from the defendant's management of a prostitution business in the Bronx and Manhattan from in or about 2014 until 2016, which business sold sex with minors.

II. **The Trial**

Trial began on November 20, 2017 before this Court. At trial, the Government presented testimony from two New York City Police Department (NYDP") detectives, three agents from the Federal Bureau of Investigation ("FBI"), two cooperating witnesses who had worked with the defendant at her prostitution business, an employee of the Administration for Children's Services, the mother of one of the defendant's minor victims, and a physician's assistant who treated another of the minor victims in this case. The Government introduced dozens of exhibits, including Facebook messages, text and audio messages the defendant exchanged with one of her minor sisters, and advertisements for prostitution the defendant posted to the website Backpage.com. The defendant testified in her own defense and introduce several Facebook exhibits. On December 1, 2017, after several hours of deliberation, the jury returned a verdict of guilty on all counts.

III. **Summary of Proof at Trial**

The proof presented at trial established beyond a reasonable doubt the defendant's guilt as to each element of the five charged offenses.

The defendant ran a prostitution business that used minor girls and adult women as prostitutes. The prostitution business began operating in at least 2014 and continued until 2016. The business advertised for customers using the website Backpage.com, where the defendant and, as time went on, others, would post advertisements for prostitution services, using a

2

combination of stock photographs and photographs of the girls and women working in defendant's prostitution business. Law enforcement officers collected approximately 1,000 advertisements for prostitution connected to the defendant's prostitution business. After seeing an advertisement, customers would call one of the defendant's phones, which were used to run the business, and would be directed to defendant's location. Upon arrival, the client would choose from the women and girls available. A standard price was $60 for half an hour of sex. Of that $60, the woman or minor girl who serviced the client would keep $40, and would pay $20 to the defendant.

At least six minor girls worked for defendant as prostitutes; three of the girls - - Maribel, Gladys (who went by "Bibi") and I.F. - - are the defendant's younger sisters. During the summer of 2015, at the height of defendant's prostitution business, these three girls were seventeen, sixteen, and fourteen years old respectively. A fourth minor victim, Ariana Roman, was a runaway who was seventeen years old (*see* GX 533 (Birth Certificate)); defendant told Arianna that she could stay at the apartment if she worked for the defendant as a prostitute. A fifth minor J.G., was fifteen years old when she worked for the defendant, (*see* GX 535 (Birth Certificate)), and a sixth minor, J.F., was thirteen years old when she worked for the defendant (*see* GX 534 (Birth Certificate)). During the time period at issue, defendant advertised her prostitution business on the website Backpage.com. Her advertisements frequently used email addresses that the defendant admitted belonged to her, as well as phone numbers registered to the defendant's alias "Soly Montana," and which she provided to others as her phone numbers on Facebook. Some of the advertisements posted by defendant contained photographs of herself, some contained photographs of women who worked for her, some contained stock photographs from the internet, and some contained photographs of the defendant's minor victims. The Backpage

advertisements for sex included photos of the defendant's sisters, I.F., Maribel, and Arianna, when they were fourteen, sixteen and seventeen years old, respectively.

The defendant arranged a trip to Pennsylvania in approximately June 2015 for herself and several of her workers, including Gabriely Jose, Arianna, and another minor girl known as Nikki. While there, the defendant posted advertisements to Backpage for Jose, Arianna and Nikki. Jose, Arianna, and Nikki each had sex with men for money there, and provided a portion of the earnings to the defendant. The defendant wrote a message to her sister about the trip, explaining "am out to pa with my girls i got 2 new ones . . . am definitely popn pussy." *See* GX 721.

In the summer of 2015, defendant coordinated with Gabriely Jose, who had helped the defendant run the prostitution business and later became a cooperating witness at trial, to recruit a thirteen year old girl to work for the defendant as a prostitute. Jose testified that she told the defendant about a girl named J.F. who was interested in working; the defendant instructed Jose to bring J.F. to the brothel's current location. Jose agreed and brought J.F. to the brothel location, where "Sole told J.F. how the business worked, as in getting a pop . . . ." *see* Trial Tr. at 187-188. Jose testified that the defendant explained to J.F. that when "she got a pop, she would have to give Soly a part and take the rest, and J.F. said okay." *Id.* at 188. After this exchange, the defendant had J.F. and Arianna participate in a "two-girl special" with the landlord of the building out of which the defendant was operating. After the landlord paid for sex with J.F. and Arianna - both minors at the time - each gave the defendant a portion of their earnings.

IV. **The Defendant's Rule 29 and 33 Motions**

On February 6, 2018, approximately two months after the jury returned its verdict in this case, the defendant moved for a judgment of acquittal with respect to Counts One and Two pursuant to Federal Rule of Criminal procedure ("Rule") 29. Dkt. No. 164. On the same date, the defendant moved, in the alternative, for a new trial pursuant to Rule 33.

4

## DISCUSSION

I. **Applicable Law**

A defendant challenging the sufficiency of the evidence "bears a heavy burden." *United States v. Aguiar*, 737 F.3d 251, 264 (2d Cir. 2013) (quoting *United States v. Hawkins*, 547 F.3d 66, 70 (2d Cir. 2008)). A conviction must be upheld if "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Persico*, 645 F.3d 85, 105 (2d Cir. 2011). The Court cannot disturb a jury's verdict unless "the evidence that the defendant committed the crime alleged is nonexistent or so meager that no reasonable jury could find guilt beyond a reasonable doubt." *United States v. Cuti*, 720 F.3d 453, 461 (2d Cir. 2013) (internal quotation marks omitted).

In considering the sufficiency of the evidence supporting a guilty verdict, the evidence must be viewed "in the light most favorable to the Government." *United States v. George*, 779 F.3d 113, 115 (2d Cir. 2015). The Court must analyze the pieces of evidence "in conjunction, not in isolation," *Persico*, 645 F.3d at 104 (quoting *United States v. Eppolito*, 543 F.3d 25, 45 (2d Cir. 2008)), and must apply the sufficiency test "to the totality of the government's case and not to each element, as each fact may gain color from others." *Cuti*, 720 F.3d at 462 (quoting *United States v. Guadagna*, 183 F.3d 122, 130 (2d Cir. 1999)).

The Court must also "credit[] every inference that the jury might have drawn in favor of the government," because "the task of choosing among competing, permissible inferences is for the fact-finder, not the reviewing court." *Cuti*, 720 F.3d at 461-62 (internal quotation marks and citations omitted). Even where "either of the two results, a reasonable doubt or no reasonable doubt, is fairly possible, [the Court] must let the jury decide the matter." *United States v. Autuori*, 212 F.3d 105, 1fourteen (2d Cir. 2000) (internal quotation marks omitted); *see also, United States v. Jackson*, 335 F.3d 170, 180 (2d Cir. 2003) ("[C]courts must be careful to avoid

5

usurping the role of the jury when confronted with a motion for acquittal." (*citing Guadagna*, 183 F.3d at 129 ("Rule 29(c) does not provide the trial court with an opportunity to substitute its own determination of . . . the weight of the evidence and the reasonable inferences to be drawn for that of the jury."))); *United States v. Matthews*, 20 F.3d 538, 548 (2d Cir. 1994) (stating that Court must affirm conviction "so long as, from the inferences reasonably drawn from the record as a whole, the jury might fairly have concluded that the defendant was guilty beyond a reasonable doubt.")

Rule 33 permits a court to "vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a). To grant a Rule 33 motion, a trial judge "must harbor a real concern that an innocent person may have been convicted." *United States v. Lin Guang*, 511 F.3d 110, 119 (2d Cir. 2007) (citations omitted). "Motions for a new trial are disfavored in th[e] [Second] Circuit," *United States v. Gambino*, 59 F.3d 353, 364 (2d Cir. 1995), and Rule 33 motions should be granted only "sparingly and in only the most extraordinary circumstances." *United States v. Ferguson*, 246 F.3d 129, 134 (2d Cir. 2001) (internal quotations and citations omitted).

II.    **Argument**

The defendant seeks a judgment of acquittal with respect to Counts One and Two of the Indictment. With respect to Count One, the defendant contends that "there was insufficient evidence . . . to prove beyond a reasonable doubt that [the defendant] was a member of the conspiracy." Def. Mem. at 10. As support for this contention, defendant simply asserts that the defendant's "relationship with her younger sisters and their friends do not make her part of a conspiracy." With respect to Count Two, the defendant contends principally that there was insufficient evidence (1) that the defendant had a reasonable opportunity to observe J.F., a minor who was under fourteen years old and who the defendant knew would be caused to engage in

6

prostitution, and (2) that "any minor victim was under fourteen years old at the time of this conspiracy." Def. Mem. at 7-10.

### A. The Jury Reasonably Concluded that the Defendant is Guilty on All Counts

#### i. The Defendant's Conviction on Count One Is Supported by the Evidence

There was overwhelming evidence of the defendant's guilt on Count One. Gabriely Jose and Vetthya Alcius testified at trial after having pled guilty to conspiring to traffic minors for sex in connection with their participation in the defendant's prostitution business. They testified in detail about their own involvement in the defendant's prostitution business as well as defendant's role in running her prostitution business. They testified that defendant was responsible for finding locations out of which to run the prostitution business; for posting advertisements for prostitution to Backpage using her phone numbers; for setting prices for the prostitution services; and for arranging a trip out of state during which minors engaged in prostitution; and that, in exchange for running the prostitution business, the defendant demanded a cut of each worker's earnings. This was all done in coordination with the defendant's many co-conspirators, including defendant's mother, Darlene Deleon, and Dawitt Dykes.

Jose testified about how defendant described her prostitution business to her. "Soly [defendant] just told me how it goes and after that, whenever a guy would come in, if it's $60 for a half-hour or an hour - or 150 for an hour, I have to give her $40 for the hour and $20 for the half-hour." Trial Tr. at 134:23-135:10. Defendant later explained to Jose "that since she's the one that's bringing the clients out, that she gets part of the money . . . . She would post on Backpage . . . through her cell phone number." *Id.* at 137. As time went on, Jose assisted the defendant in running the business. Jose testified about her own agreement with the defendant to recruit J.F. to work for the defendant's prostitution business.

7

Alcius testified similarly about the defendant's role in running the prostitution business. She testified that, while defendant was involved in the prostitution business, the defendant and one of the minor victims generally posted advertisements to Backpage. She explained that defendant set the prices for prostitution services, and that defendant provided the telephone used to buy postings on Backpage.

Jose and Alcius also testified at length about the minors who worked for the defendant as prostitutes. Jose testified that, during the time she worked with defendant, she learned the ages of the girls working for the defendant's prostitution business. She testified that I.F. was fourteen, Nikki was sixteen, and Ari was seventeen. Alcius' testimony was consistent with that of Jose with respect to how defendant conducted her business.

Defendant herself testified consistently with Jose and Alcius, in describing her business. The jury heard an audio recording of the defendant telling her minor sister that the girls and women working for her should not complain about giving the defendant a cut of the money because "first and foremost . . . You fuckin' my clients!" GX 721 B-T. "You think I'm gonna let you really come to my side of town and you ain't gonna give me no money, you gonna use my place where I pay rent at, and you gonna use the bathroom where my cousin let, you know what I mean . . . I rent a room from my cousin [Darlene Deleon] and I let y'all be, know what I'm saying?" *Id.* She then mentioned that her fourteen-year-old sister, I.F. was "working" with her. *Id.* On the basis of this recording, the testimony and numerous exhibits, the jury had a sufficient basis to find the defendant guilty of conspiring with her cousin and co-defendant, Darlene Deleon, to traffic minors for sex.

8

### ii. The Defendant's Conviction on Count Two Is Supported by the Evidence

Count Two charged the defendant with violating Title 18, United States Code, Sections 1951(a), (b)(1), and 2. The jury was instructed that the defendant was guilty on Count Two if: (1) the defendant recruited, enticed, harbored, transported, provided, obtained, or maintained a person, (2) the person was under fourteen, (3) the defendant knew or recklessly disregarded that the person would be caused to engage in a commercial sex act, and (4) the defendant had a reasonable opportunity to observe that person.

The Government presented extensive proof at trial of the defendant's involvement in trafficking J.F., a minor who was thirteen years old, for sex. The defendant now argues that there was insufficient evidence that she had a reasonable opportunity to observe J.F., and appears to argue that J.F. was not in fact under fourteen at the relevant time.

It is unquestionable that J.F. was thirteen years old during the relevant time period. The cooperating witnesses both testified that J.F. first began working for the defendant in the summer of 2015, at which time she was in fact thirteen years old. The Government introduced J.F.'s birth certificate, which shows that J.F. was born in 2002. Melinda Jimenez, a physician's assistant who regularly treated J.F. at J.F.'s middle school health clinic, also testified that J.F. was born in 2002. This evidence refutes conclusively defendant's meritless asserting that "[t]here was no evidence presented in this case that any minor victim was under fourteen years old at the time of this conspiracy." Def. Mem. at 10.

The evidence also supports the jury's conclusion that the defendant had a reasonable opportunity to observe J.F. The defendant herself admitted during her testimony that she met J.F. two times. *See* Trial Tr. at 808:1-9. At the first meeting, one of defendant's sex workers introduced her to defendant, saying the J.F. wanted to work. Defendant remarked that

9

J.F. looked young, but J.F. told defendant she had done it before and she wanted to work. The defendant then explained to J.F. how her prostitution business operated, including the requirement that defendant be given a portion of her earnings. The landlord for the apartment then appeared asking for a "two girl special." He chose J.F. and another girl. J.F. and the other girl had sex with him, and afterward each gave defendant $20. This interaction satisfies the legal standard, which requires only that "the defendant had an in-person, face-to-face interaction with the victim." Trial Tr. at 962:24-963:1.

### B. A New Trial Is Not Warranted

The defendant's argument that a new trial is warranted because "the verdict was against the cumulative weight of the evidence" ignores the overwhelming evidence of the defendant's guilt presented at trial. The two cooperating witnesses testified at length and in great detail about the defendant's role in running a prostitution business that trafficked minors, including her own sisters. The defendant profited from this venture, charging $20 per half hour each girl worked. She provided the apartments out of which the minors worked having sex for money. This testimony, along with corresponding documentary evidence, were more than sufficient to support the defendant's conviction on Counts One and Two.

### CONCLUSION

For the reasons set forth above, the Court denies defendant's motion for acquittal on Counts One and Two, and motion for a new trial.

This Opinion and Order resolves Dkt. No. 164.

SO ORDERED.

Dated: New York, New York
July 26, 2018

                                           */s/ Kimba M. Wood*
                                        THE HON. KIMBA M. WOOD
                                        United States District Judge